# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN M. CARTER, and on behalf of other Similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM MULDOON, individually and in his official capacity as Director of NLETC; DAVE STOLZ, individually and in his official capacity as Counsel for the NLETC; NEBRASKA LAW ENFORCEMENT TRAINING CENTER, and DOES 1-25 INCLUSIVE,<br><br>Defendants. | 8:17CV319<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Dismiss, ECF No. 26, filed by Defendants William Muldoon and Dave Stolz, and the Motion to Dismiss, ECF No. 51, filed by Defendant Nebraska Law Enforcement Training Center (NLETC). Also before the Court is Plaintiff John Carter's Objection to Order on Motion to Set Aside Default, ECF No. 50. For the reasons stated below, the Motion to Dismiss filed by NLETC will be granted; the Motion to Dismiss filed by Muldoon and Stolz will be granted in part, and Carter's Objection will be denied.

## BACKGROUND

The following facts are those alleged in the Amended Complaint, ECF No. 1, which are assumed true for purposes of the Motion to Dismiss.

"On August 14, 2017, Carter entered into an employment agreement with the Dundy County Sheriff's Office . . . ." Comp. ¶ 8, ECF No. 1, Page ID 2-3. During

Carter's first week of employment, Muldoon, the director of the NLETC, called the county attorney for Dundy County to advise him that Carter's employment should not be maintained because Carter had been disbarred in the State of Nebraska six years earlier. Muldoon believed Carter's disbarment evidenced a lack of credibility and that he was unfit to be a law enforcement officer. Muldoon subsequently sent "all the information" regarding Carter's disbarment to the Dundy County Attorney's Office. *Id.* Despite Muldoon's concerns, the county attorney and the sheriff for Dundy County decided Carter's disbarment "would not be much of a consequence in the hiring decision." Comp. ¶ 9, ECF No. 1, Page ID 3. Muldoon then contacted Dundy County's insurance company and recommended that they refuse to insure Dundy County for any liabilities based on Carter's conduct. Carter does not allege that his employment with the Dundy County Sheriff's Office was terminated.

In 2014, prior to his employment with Dundy County, the City of Newman Grove, Nebraska, hired Carter as its chief of police. The former chief of police contacted Muldoon and, shortly thereafter, Carter received notification from the mayor that the offer of employment was rescinded due to Carter's prior disbarment and related credibility issues. Carter also alleges that while he was the "assistant and interim Chief of Police in Tekamah, Nebraska," Muldoon prevented him from attending a required management training course offered by the NLETC due to the disbarment. Comp. ¶ 14, ECF No. 1, Page ID 4-5. Carter eventually was permitted to attend the training 45 days after he was denied admission.

At some point, Muldoon also sent a letter to the Nebraska Crime Commission that recommended the Commission revoke Carter's law enforcement officer credentials.

The Commission asked the Nebraska Attorney General to investigate the matter and the Attorney General's office concluded that revoking Carter's credentials was not necessary. The Commission sent Carter a letter informing him that he was permitted to continue to serve as an unrestricted law enforcement officer in Nebraska.

Carter alleges that "to the present day, Muldoon and Dave Stolz[1] have contacted every employer known to them that [Carter] sought employment with and interfered with [his] attempt to gain suitable employment in a law enforcement capacity." Comp. ¶ 20, ECF No. 1, Page ID 20. After Muldoon alerted Dundy County of Carter's disbarment, the county attorney informed Carter that he expected the defense bar to challenge Carter's credibility in connection with his work as a law enforcement officer. Carter claims he now works in a hostile work environment; that his authority will be consistently challenged; and that he is no longer safe working as a law enforcement officer. He asserts that Muldoon and Stolz will continue to interfere with his employment opportunities because he is a black male, and that there are other non-black individuals "declared by a Federal District Judge in Nebraska" to be unfit to serve as law enforcement officers who have not been subjected to the same treatment.

Carter filed this action, pro se, on August 28, 2017, against the NLETC and against Muldoon and Stolz, in their individual and official capacities. He enumerates the following claims in his Complaint: (1) "Deprivation of Equal Protection and Due Process"

---

[1] Stolz is "legal counsel and [a] staff member" for the NLETC. Comp. ¶ 3, ECF No. 1, Page ID 1.

under 42 U.S.C. § 1982;[2] (2) "Conspiracy against Rights" under 18 U.S.C. § 241; (3) "Racial Discrimination under Color of Law" under 42 U.S.C. § 1981;[3] (4) "Deprivation of Right under Color of Law" under 18 U.S.C. § 242; (5) "Federally Protected Activities" under 18 U.S.C. § 245; (6) "Interference with Economic Opportunity" under Nebraska law; and (7) "Injunctive Relief." Comp., ECF No. 1, Page ID 13-18. The NLETC, and Muldoon and Stolz, separately moved to dismiss Carter's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## STANDARD OF REVIEW

**I. 12(b)(1)—Subject Matter Jurisdiction**

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). *Doe v. Nixon*, 716 F.3d 1041, 1047 (8th Cir. 2013).**]** "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young America Corp. v. Affiliated Comput. Servs.,* 424 F.3d 840, 843-44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593). In a factual challenge to jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of

---

[2] Construing the Complaint liberally, it is clear that Carter intended to bring his equal protection and due process claims under 42 U.S.C. § 1983, not 42 U.S.C. § 1982. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (stating pro se complaints are to be construed liberally).

[3] Although "a violation of § 1981 may not be brought directly against a state actor, but must be brought under § 1983," the Court liberally construes the pro se Complaint as appropriately asserting a violation of §1981 under § 1983. *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1007 (8th Cir. 2003).

4

its power to hear the case." *Osborn*, 918 F.2d at 730. "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (citing *Osborn*, 918 F.2d 724, 730). The plaintiff has the burden of proving jurisdiction exists; "[h]owever, the 'heavy' burden of proving mootness falls on the party asserting the case has become moot." *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d 724.

"As no statute or rule prescribes a format for evidentiary hearings on jurisdiction, 'any rational mode of inquiry will do.'" *Brown*, 2010 WL 489531, at *2 (citing *Osborn*, 918 F.2d 724, 730). "So long as the court has afforded the parties notice and a fair opportunity to be heard, an evidentiary hearing is unnecessary." *Brown*, 2010 WL 489531, at *2 (citing *Johnson v. United States*, 534 F.3d 958, 964-65 (8th Cir. 2008)).

**II. 12(b)(6)—Failure to State a Claim**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

5

inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

**I. Carter's Motion**

In his "Objection to Order on Motion to Set Aside Default" Carter asks the Court to reconsider its Memorandum and Order setting aside the Clerk's entry of default against the NLETC, ECF No. 49, and asks that the undersigned Judge recuse herself from this case under 28 U.S.C. § 455(a).

District courts have general discretionary authority to review and revise their interlocutory rulings prior to the entry of final judgment under Rule 54(b), *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 857 (8th Cir. 2008) (citing Fed. R. Civ. P. 54(b)), but motions to reconsider are generally disfavored. *See Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1119 (8th Cir. 2011). The Clerk's entry of default against NLETC was properly set aside, and Carter's Objection to Order on Motion to Set Aside Default will be denied.

With regard to Carter's request for recusal, "[a]s an initial matter, motions for recusal under § 455(a)[4] must be timely." *In re Steward*, 828 F.3d 672, 681-82 (8th Cir. 2016) (quoting *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 653 (8th Cir. 2008)). Section 455(a) "requires a party to raise a claim at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Id*. This case was assigned to the undersigned Judge on November 27, 2017. Carter's Complaint alleges that the undersigned "sent a letter to the American Bar Association and made a District Court record concerning [his] disbarment," yet no § 455(a) motion was made

---

[4] Section 455(a) requires "[a]ny justice, judge, or magistrate judge of the United States [to] disqualify himself in any proceeding in which his impartiality might reasonably by questioned."

until March 27, 2018, six days after the Court set aside the Clerk's entry of default against the NLETC. *See Steward*, 828 F.3d at 682 ("The timeliness requirement under § 455 is intended to avoid the risk that the party might hold its application as an option in the event the trial court rules against it[.]").

Even if his motion were timely, the fact that the undersigned Judge adopted a magistrate judge's Findings and Recommendation that Carter be disbarred from practice before this Court does not warrant recusal under § 455(a). *Dist. of Neb. v. Carter*, Case No. 8:11AD20 (D. Neb. Jan. 24, 2012). The Nebraska Supreme Court disbarred Carter from practicing law in the State of Nebraska, *State ex rel. Counsel for Discipline of Neb. Supreme Court v. Carter*, 808 N.W.2d 342 (Neb. 2011), and Magistrate Judge Zwart then recommended he also be disbarred from practice before this Court. *See United States v. Minard*, 856 F.3d 555, 557 (8th Cir. 2017) ("[A] judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."). The Court concludes that the undersigned's impartiality in this matter is not reasonably in question, and Carter's request for recusal, contained in the Motion, will also be denied.

**II. Claims Asserted Under 18 U.S.C. §§ 241, 242, 245**

Carter has no private right of action under 18 U.S.C. §§ 241, 242, or 245. Although, "[a] criminal statute may provide an implied private right of action if Congress so intended in enacting the criminal statute[,]" *Wisdom v. First Midwest Bank*, 167 F.3d 402, 407 (8th Cir. 1999), "it is well-settled that criminal statutes will rarely" provide a private right of action, *Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003). The Eighth Circuit has specifically held that "there is no private right of action under § 241," and

many other courts that have considered whether §§ 242 and 245 confer a private right of action have concluded they do not. *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998); *see also Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (finding no private right of action under §§ 241 and 242); *Houck v. Ball*, 511 F. App'x 704 (10th Cir. 2013) (finding no private right of action under § 242); *Kelly v. Rockefeller*, 69 F. App'x 414, 416 (10th Cir. 2003) (stating § 245 explicitly reserves the right of prosecution to government officials"); *Wolf v. Jefferson Cty*, Case No. 4:15-CV-1174-CEJ, 2016 WL 233247, at *2 (E.D. Mo. Jan. 20, 2016) (finding §§ 241, 242, and 245 do not confer a private right of action). Carter's claims under 18 U.S.C. §§ 241, 242, and 245 will be dismissed, with prejudice, under Fed. R. Civ. P. 12(b)(6)[5] because those sections do not confer a private right of action.

### III. NLETC and Official-Capacity Claims

Carter's § 1983 claims for damages and prospective injunctive relief against the NLETC and Muldoon and Stolz, in their official capacities, will be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The NLETC as well as Muldoon and Stolz, in their official capacities, are not "persons" subject to damages claims under § 1983 and Carter lacks Article III standing to assert his claim for prospective relief. His claim for tortious interference with a business expectancy under Nebraska law will also be dismissed under Fed. R. Civ. P. 12(b)(1) because the Court lacks subject-matter jurisdiction over that claim.

### A. Claims Under 42 U.S.C. § 1983

---

[5] Where a statute does not confer a private right of action any claims asserted thereunder are appropriately dismissed under Fed. R. Civ. P. 12(b)(6). *See Adams v. Eureka Fire Protection Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009).

States, state agencies, and state officials acting in their official capacities are not "persons" subject to claims for damages under § 1983. *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) and *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, "[s]tate officials acting in their official capacities are § 1983 'persons' when sued for *prospective* relief, and the Eleventh Amendment does not bar such relief." *Murphy*, 127 F.3d at 754 (citing *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996) (emphasis added)); *see also 281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (explaining the "general prohibition of suits in federal court by a citizen of a state against his state or an officer or agency of that state" and the prospective-relief exception to this rule identified by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908)).

Thus, Carter's damages claims against the NLETC and Muldoon and Stolz, in their official capacities, must be dismissed, with prejudice. Carter's official-capacity claim for prospective injunctive relief will also be dismissed because the facts alleged in the Complaint fail to demonstrate an actual and imminent threat of future injury that is concrete and particularized. Thus, Carter lacks Article III standing to assert his claim for prospective relief.

It is Carter's burden, as the party invoking federal jurisdiction, to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

> Standing requires that in order to seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Lujan*, 504 U.S. at 561. Yet, the allegations must show that the plaintiff "faces a threat of future or ongoing harm," and "[a]n injury resulting from past illegal conduct alone is not enough to support a claim for injunctive relief. *Park v. Forest Serv. of the U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000). "[S]peculation that a future injury may occur is not sufficient to warrant injunctive relief." *Guggenberger*, 198 F. Supp. 3d at 991 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The threat of injury must be "actual and imminent" as well as "concrete and particularized." *Bernbeck*, 829 F.3d at 646 (quoting *Summers*, 555 U.S. at 493).

The Complaint fails to allege the existence of an actual and imminent future injury that is concrete and particularized. Carter alleges multiple past instances where his efforts to gain employment as a law enforcement officer were inhibited or prevented. He also alleges that he was subjected to this treatment by Muldoon and Stolz because of his race. However, "past exposure to illegal conduct," on its own, does not confer standing for injunctive relief, *Park*, 205 F.3d at 1037, and his remaining allegations of a future injury are too speculative. Carter broadly alleges that based on these prior instances of discrimination, he believes he "will continue to be discriminated against" in the future. Yet, the Dundy County Sheriff's Office decided to maintain Carter's employment even after Muldoon alerted that Office to Carter's disbarment and perceived credibility issues. Thus, there is no imminent threat to Carter's current employment. Nor are there any allegations that suggest Muldoon and Stolz pose a

future, imminent threat of injury to Carter that is concrete and particularized. Therefore, based on the facts alleged, Carter's "theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Although Carter alleges that he will continuously suffer challenges to his credibility from the defense bar and disrespect for his authority from criminal suspects and witnesses, this alleged injury is a result of his prior disbarment, which is publicly available information.[6] UNITED STATES DISTRICT COURT DISTRICT OF NEBRASKA, PUBLIC ORDERS IMPOSED AGAINST ATTORNEYS, https://www.ned.uscourts.gov/attorney/attorney-discipline (last visited May 1, 2018). Therefore, this is not an injury that a judgment in this action can redress.

### B. Tortious Interference with a Business Expectancy

The Court lacks subject-matter jurisdiction over Carter's claim against the NLETC and Muldoon and Stolz, in their official capacities, for tortious interference with a business expectancy under Nebraska law. "Sovereign immunity bars any suits against states and their employees in their official capacities." *Montin v. Moore*, 846 F.3d 289, 292 (8th Cir. 2017). Although "Nebraska has waived sovereign immunity for a limited set of claims," *Id.*, the Nebraska State Tort Claims Act (STCA), Neb. Rev. Stat. § 81-8, 209 *et seq.*, grants exclusive jurisdiction over those claims to "the district court of the county in which the act or omission complained of occurred . . . ." Neb. Rev. Stat. § 81-8, 214. Thus, even if Carter's tortious-interference claim were not barred by sovereign

---

[6] The Court will not address Carter's allegations that challenge the propriety of his disbarment.

12

immunity, the Court lacks subject-matter jurisdiction over it. *Montin*, 846 F.3d at 293 (citing Neb. Rev. Stat. § 81-8, 214) (requiring all claims under the STCA be brought in a Nebraska state district court).

Accordingly, Carter's § 1983 claims against the NLETC and Muldoon and Stolz, in their official capacities, for damages will be dismissed, with prejudice, and his claims for prospective relief and for tortious interference with a business expectancy will be dismissed, without prejudice.

## IV. Individual-Capacity Claims

Carter may proceed against Muldoon and Stolz, in their individual capacities, on the following claims: (1) race discrimination under 42 U.S.C. § 1981, (2) equal protection under the Fourteenth Amendment, and (3) substantive due process under the Fourteenth Amendment. His individual-capacity claim for tortious interference with a business expectancy under Nebraska law will be dismissed under Fed. R. Civ. P. 12(b)(1) because the Court lacks subject-matter jurisdiction over it.

### A. Race Discrimination—42 U.S.C. § 1981

"To state a claim under § 1981, a plaintiff must plead: '(1) that the plaintiff is a member of a protected class; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination on the basis of race interfered with a protected activity as defined in § 1981.'" *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016) (quoting *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004)). Muldoon and Stolz argue Carter failed to plead the third element.

Carter alleges that Muldoon and Stolz intentionally discriminated against him by repeatedly interfering and attempting to interfere with his employment opportunities. He

13

asserts that, in one instance, an offer of employment was rescinded after such interference. Employment, whether pursuant to an express written contract or not, is protected under § 1981's contract clause. *Singletary v. Missouri Dep't of Corrections*, 423 F.3d 886, 890 n.3 (8th Cir. 2005) (citing *Skinner v. Maritz, Inc.*, 253 F.3d 337, 339 (8th Cir. 2001) ("[A]n at-will employee, employed without a written contract in an agreement terminable at will by either party, has a 'contract' within the meaning of civil rights statute guaranteeing equal rights to make and enforce contracts."); *see also LaRocca v. Precision Motorcars, Inc.*, 45 F. Supp. 2d 762, 776 (D. Neb. 1999) ("[A]n at-will employment relationship, though terminable at will, is contractual."). Thus, Carter's § 1981 claim will not be dismissed for failure to plead the alleged race discrimination interfered with a protected activity.

### B. Qualified Immunity

"Qualified immunity shields government officials from liability in their individual capacity so long as the official has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). "To determine whether a public official is entitled to immunity, courts conduct a two-pronged analysis: 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction.'"

14

*Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quoting *Carter*, 831 F.3d at 1107). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and "an official is entitled to qualified immunity unless both prongs are satisfied," *Kulkay*, 847 F.3d at 642.

"To be clearly established, preexisting law must make the unlawfulness of the officials' conduct apparent so that they have 'fair and clear warning' they are violating the constitution; qualified immunity therefore protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018) (quoting *White v. Pauly*, __U.S.__, 137 S. Ct. 548, 551 (2017) (per curiam)). "[P]laintiffs have the burden of showing that the law was clearly established." *Wallace*, 881 F.3d at 1060 (citing *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013)).

### 1. Equal Protection Claim

Muldoon and Stolz first argue that Carter failed to state a plausible claim for violation of the Equal Protection Clause of the Fourteenth Amendment because he did not allege he was treated differently from others similarly situated to him. "As a threshold matter, in order 'to state an equal protection claim, [the plaintiff] must have established that he was treated differently from others similarly situated to him.'" *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (quoting *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998)). They "must be similar 'in all relevant respects.'" *Carter*, 392 F.3d at 969 (quoting *Bills v. Dahmi*, 32 F.3d 333, 335 (8th Cir. 1994)).

In his Complaint, Carter identified one Caucasian law enforcement officer who "had been declared by a Federal District Judge in Nebraska not to be fit or credible to

15

serve in a law enforcement capacity" for falsifying evidence, but was not subjected to the same treatment as Carter by Muldoon, Stolz, and the NLETC. Comp. ¶ 25, ECF No. 1, Page ID 7. Muldoon and Stolz contend that Carter stated no facts regarding "other officers who were previously disbarred who were treated differently[,]" and so he has failed, as a matter of law, to allege he was treated differently from others similarly situated to him in all relevant respects. Def.s' Br., ECF No. 27, Page ID 92. It is a defendant's burden to demonstrate that he is entitled to qualified immunity because the plaintiff has not stated a plausible constitutional claim, and Muldoon and Stolz have not met that burden. *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014).

Second, they argue that Carter's allegations fail to show a violation of a clearly established equal protection right, because no reasonable official would believe that alerting Carter's potential employers to his disbarment violated his constitutional rights. However, Carter does not allege that this conduct, alone, violated a clearly established right. He alleges that Muldoon and Stolz intentionally alerted Carter's potential employers of his credibility issues because he is African American, and that Muldoon and Stolz intentionally did not alert potential employers of similar credibility issues involving a Caucasian officer. *See Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (A denial of equal protection includes "an element of intentional or purposeful discrimination."). "[I]it is a clearly established principle of constitutional law that a government official may not discriminate on the basis of race." *Thomas v. Talley*, 251 F.3d 743, 745 (8th Cir. 2001) (citing *Goodwin v. Circuit Court of St. Louis Cty.*, 729 F.2d 541, 546 (8th Cir. 1984) ("The constitutional right to be free from [race] discrimination is

so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it.").

Muldoon and Stolz have not shown that they are entitled to qualified immunity on Carter's § 1983 equal protection claim at this stage of the litigation. Therefore, this claim will not be dismissed.

### 2. Due Process Claim

Muldoon and Stolz argue that Carter failed to state a plausible procedural due process claim, but they do not address whether Carter stated a plausible substantive due process claim. Carter's Complaint does not allege he was denied adequate procedural due process, but that Muldoon and Stolz attempted to prevent him from gaining, or maintaining, employment as a law enforcement officer because he is African American. *See Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006) (stating the Due Process Clause of the Fourteenth Amendment "has two components: procedural due process and substantive due process.") (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)); *see also Efinchuk v. Astrue*, 480 F.3d 846, 849 (8th Cir. 2007) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures."). Although Carter has not alleged a plausible procedural due process claim, Muldoon and Stolz have not demonstrated that qualified immunity shields them from Carter's § 1983 substantive due process claim, and it will not be dismissed at this juncture.

### C. Tortious Interference with a Business Expectancy

Under Nebraska law, state government officials and employees are personally and individually subject to tort claims "only when the officer or employee was *not* acting within the scope of his or her office or employment." *Davis v. State*, 902 N.W.2d 165, 181 (Neb. 2017). Although Carter argues in his brief that Muldoon and Stolz acted outside the scope of their employment, his Complaint alleges "the defendants knew, or should have known, that their actions were within their scope of authority . . . ." Comp. ¶ 44, Page ID 12. He cited no authority in support of his assertion that they acted beyond the scope of their employment, nor are there any facts alleged in the Complaint that support this conclusion. Therefore, Carter's tortious interference claim against Muldoon and Stolz, in their individual capacities, will be dismissed, with prejudice. *See Kruger v. Nebraska*, 90 F. Supp. 3d 874, 881-82 (D. Neb. 2015), *aff'd* 820 F.3d 295 (8th Cir. 2016) (explaining that if the defendants acted within the scope of their employment, the plaintiff must comply with the State Tort Claims Act) (citing *Bohl v. Buffalo Cty.*, 557 N.W.2d 668, 674 (1997)).

## CONCLUSION

Carter may proceed against Muldoon and Stolz, in their individual capacities, on the following claims: (1) race discrimination under 42 U.S.C. § 1981, (2) equal protection under the Fourteenth Amendment, and (3) substantive due process under the Fourteenth Amendment.

Accordingly,

IT IS ORDERED:

1. The Objection, ECF No. 50, filed by Plaintiff John Carter is denied;

2. The Motion to Dismiss, ECF No. 26, filed by Defendants William Muldoon and Dave Stolz is granted, in part, as follows:

   The claim for tortious interference with a business relationship or expectancy against Defendants William Muldoon and Dave Stolz, in their individual capacities, is dismissed, with prejudice;

   The Motion is otherwise denied;

3. The Motion to Dismiss, ECF No. 51, filed by Defendant Nebraska Law Enforcement Training Center is granted;

4. Defendant Nebraska Law Enforcement Training Center is dismissed from this action;

5. Plaintiff John Carter's claims for damages under 42 U.S.C. § 1983 against Defendants Nebraska Law Enforcement Training Center and William Muldoon and Dave Stolz, in their official capacities, are dismissed, with prejudice;

6. Plaintiff John Carter's claim under 42 U.S.C. § 1983 for prospective injunctive relief and his claim under Nebraska law for tortious interference with a business expectancy against Defendants Nebraska Law Enforcement Training Center and William Muldoon and Dave Stolz, in their official capacities, are dismissed, without prejudice;

7. Defendants William Muldoon and Dave Stolz, in their individual capacities, will respond to the remaining claims on or before May 18, 2018.

Dated this 1st day of May, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge